UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH WIGGINS,

    Plaintiff,

vs.                      Case No.

ALERE, INC.,

    Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Kenneth Wiggins ("Wiggins"), by and through his undersigned counsel, hereby sues Alere, Inc., and states as follows:

### **Nature of the Action**

1. This is an action to remedy violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("the ADEA"), and for breach of contract (unpaid wages) and, in the alternative, quantum meruit.

### **Jurisdiction and Venue**

2. This court has subject matter jurisdiction over the claims asserted by Wiggins for violations of the ADEA pursuant to 29 U.S.C. § 623(a)(1) & (2) and 28 U.S.C. §§ 1331 and 1343(a)(4), and supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claims for unpaid wages (breach of contract/quantum meruit), which are sufficiently related to form part of the same case and controversy.

3. Wiggins is a member of a protected class under the ADEA based on his age (65 at time of termination of employment).

4. Wiggins timely filed an administrative charge of discrimination with the Equal Employment Opportunities Commission ("the EEOC"), received his 90-Day Notice of Right to Sue dated December 19 on December 23, 2016, and files the instant action within ninety (90) days thereafter.

5. Venue is proper in this judicial district claims because the acts complained of occurred within the Middle District of Florida.

## The Parties

6. Wiggins is a citizen of the United States and a resident of Pinellas County, Florida.

7. Alere is an employer within the meaning of 29 U.S.C. § 630(b), doing business within the state of Florida at all times relevant hereto.

## General Allegations

8. Alere is a U.S. business based in Walham, Maine, with offices worldwide, and does business in the state of Florida.

9. From January 2009 to January 2016, Wiggins was employed by Alere as an Account Executive in Alere's Region 300, encompassing Florida, Georgia, Alabama, Mississippi, Louisiana, Texas and Puerto Rico.

10. The territories assigned to Wiggins during his employment were located within the state of Florida; Wiggins was part of the South East Team in Florida.

11. During his tenure with Alere, Wiggins worked for a total of nine managers, eight of whom consistently ranked him a top performer in the company.

12. Wiggins had a long history of meeting or exceeding his sales objectives.

13. At the time of his termination, Wiggins' direct supervisor was Matthew Miller ("Miller"), Regional Sales Manager, Alere Gulf Coast Region.

14. In late 2015, at a sales team dinner meeting, Miller made several comments indicating that he preferred younger team members to older team members, and that he was looking to the younger team members for new sales ideas.

15. Miller also stated that younger employees were more "loyal."

16. Miller also made comments to Wiggins about Wiggins' personal vehicle that Wiggins used for business, suggesting that it was the sort of car an "old" person would drive.

17. Wiggins, then age 64, heard these comments and, for the first time, became concerned that his new boss might be biased against him due to his age.

18. In fact, immediately after that sales team dinner meeting, Miller put Wiggins on a 30-day Performance Improvement Plan ("the PIP"), claiming that the reason was because Wiggins' sales numbers were "only at 86% of forecast."

19. However, just the preceding week Miller had sent emails to all team members advising them that Alere's reports and data "were all messed up" and could not be relied on.

20. In addition, during this time period the South East Team in Florida was dealing with some unique challenges:

   (a) The company had just experienced an FDA recall that had customers cancelling millions of dollars of sales and signing five-year contracts with Alere's competitors.

   (b) FDA recalls caused major confidence issues with hospitals, physicians and reference labs.

   (c) A new molecular product that had been well received in other states had no Medicaid reimbursement in Florida, which eliminated almost all account types to which it could be marketed.

21. Accordingly, any sales forecast projected for Wiggins' sales must logically be viewed in the context of the unanticipated challenges created by the FDA recalls and the new product that was not Medicaid reimbursable in the state of Florida.

22. The PIP detailed specific sales objectives, each of which Wiggins was required to meet in order to keep his job.

23. The PIP objectives, however, were unrealistic and clearly unattainable, in view of the FDA product recall and the unavailability of Medicaid reimbursement in Florida for one of the products Wiggins was required to sell.

24. As the end of the 30-day PIP drew near, Wiggins was given the choice of either being terminated for failing to meet the objectives of the PIP, or being permitted to continue working for Alere through the holidays in December 2015 if he would submit his resignation effective in January 2016.

25. Given the ultimatum to resign or be fired, Wiggins reluctantly agreed to resign.

26. Because the resignation was not voluntary, it was a termination of Wiggins' employment by Alere.

27. Wiggins was also told by Miller that unless the language he used in his resignation letter was deemed acceptable, he would not be permitted to continue working through January 21, 2016.

28. Both Miller and Alere HR Director Karen Slovis ("Slovis") also advised Wiggins that using positive language in his resignation letter would benefit him in obtaining another job.

29. Slovis added that Wiggins could relay any negative information about his termination and the reasons for submitting the resignation letter separately, in his exit interview, which he did.

30. Upon information and belief, other older team members were also terminated or forced to resign, while younger team members with poorer sales records were retained by Alere.

31. Subsequent to Wiggins' termination, Alere confirmed that the sales numbers originally reported at the time he was placed on the PIP were in fact wrong, and Wiggins' real sales numbers were actually significantly higher.

32. For example, in one account alone (Bay Care Health Systems) close to $1 million was missing from the original report of sales.

33. After the termination of his employment at Alere, Wiggins began diligently searching for new employment, but his efforts were impeded by the fact that Miller had told others in the industry (including Wiggins' former customers) that Wiggins had "retired."

34. The statement that Wiggins had retired was patently untrue.

35. Miller was well aware that Wiggins intended to look for another job.

36. Further, the statement the Wiggins had retired called unwanted attention to his age, as it was not Wiggins' intention to disclose to potential employers the fact that he was 65 years old.

37. It has been necessary for Wiggins to retain the undersigned attorneys to represent him in this matter, and he is obligated to pay a reasonable attorney's fee.

38. All conditions precedent to the bringing of this action have been satisfied, occurred or been waived.

## Count I

### Discrimination in Violation of the ADEA

39. This is an action to remedy discrimination in employment in violation of the ADEA.

40. Plaintiff reincorporates paragraphs 1 through 38 as though fully set forth herein.

41. Wiggins was subjected to age discrimination in violation of the ADEA.

42. Specifically, Wiggins was placed on a PIP and terminated from employment due to his age.

43. Alere's conduct in violating the ADEA was willful.

44. Wiggins suffered damages as a result of the violations of the ADEA, including past, present and future loss of income.

45. The ADEA provides for the recovery by Plaintiff of a reasonable attorney's fee.

WHEREFORE, Plaintiff requests this Court award back pay, front pay (or reinstatement), liquidated damages, prejudgment interests, a reasonable attorney's fee, the costs of this action and all other proper relief.

## Count II

### Breach of Contract – Unpaid Compensation

46. This is an action for breach of contract to recover unpaid commissions.

47. Plaintiff reincorporates paragraphs 1 through 38 as though fully set forth herein.

48. Alere agreed to compensate Wiggins through sales commissions in exchange for the services Wiggins performed as an employee of Alere.

49. This agreement constituted a contract between Alere and Wiggins.

50. The sales reports provided to Wiggins and other employees for the year 2015 were incorrect; specifically, the sales (and therefore the commissions owed) were significantly higher than stated on the sales reports.

51. The failure to accurately pay all commissions due and owing to Wiggins was a breach of contract by Alere.

52. Subsequent to his termination, Alere made a partial payment to Wiggins representing commissions for certain sales that had been omitted from the previous reports.

53. Upon information and belief, Alere has still not paid Wiggins all of the commissions due and owing for his sales during 2015, nor has Alere accurately reported such sales.

54. Wiggins has suffered damages in the amount of the unpaid commissions.

55. Wiggins' unpaid commissions constitute wages under the Section 448.08, Florida Statutes, which provides for recovery of attorney's fees in any action by an employee to recover unpaid wages.

    **WHEREFORE**, Plaintiff requests this Court perform an accounting of all commissions owed to Wiggins, and award damages in the amount of the unpaid commissions, prejudgment interests, a reasonable attorney's fee, the costs of this action and all other proper relief.

### Count III

### Quantum Meruit – Unpaid Compensation

56. This is an action in the alternative for unpaid commissions based on quantum meruit.

57. Plaintiff reincorporates paragraphs 1 through 38 as though fully set forth herein.

58. Alere agreed to compensate Wiggins through sales commissions in exchange for the services Wiggins performed as an employee of Alere.

59. Alere acquiesced in the provision of such services by Wiggins.

60. Alere was aware that Wiggins expected to be compensated through the commission structure that had been communicated by Alere to its account executives.

61. The sales reports provided to Wiggins and other employees for the year 2015 were incorrect; specifically, the sales (and therefore the commissions owed) were significantly higher than stated on the sales reports.

62. By collecting the sales revenues but failing to pay Wiggins the proper commissions he earned on those sales, Alere was unjustly enriched.

63. Subsequent to his termination, Alere made a partial payment to Wiggins representing commissions for certain sales that had been omitted from the previous reports

64. Upon information and belief, Alere has still not paid Wiggins all of the commissions due and owing for his sales during 2015, nor has Alere accurately reported such sales.

65. Wiggins has suffered damages in the amount of the unpaid commissions.

66. Wiggins' unpaid commissions constitute wages under the Section 448.08, Florida Statutes, which provides for recovery of attorney's fees in any action by an employee to recover unpaid wages.

**WHEREFORE**, Plaintiff requests this Court perform an accounting of all commissions owed to Wiggins, and award damages in the amount of the unpaid commissions, prejudgment interests, a reasonable attorney's fee, the costs of this action and all other proper relief.

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded on all issues so triable.

Respectfully Submitted,

/s/ Phyllis J. Towzey
_____
Phyllis J. Towzey, Esq.
Florida Bar No. 724970
Phyllis J. Towzey, P.A.
The Kress Building
475 Central Avenue, Suite 401
St. Petersburg, FL  33701
(727) 895-1200
(727) 892-9925 (fax)
phyllis@towzey.com
Attorneys for Plaintiff